IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARISOL VALENTIN-NIEVES,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

Civil No. 08-2101 (FAB/BJM)

**OPINION AND ORDER**

Plaintiff Marisol Valentin-Nieves ("Valentin") filed a complaint seeking judicial review of the decision of the defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), that Valentin was not disabled prior to March 31, 2005, under Sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. (Docket No. 1). Specifically, Valentin asks for judgment reversing the determination of the Commissioner, or, in the alternative, vacating the Commissioner's decision and remanding the matter for further proceedings. (Docket No. 16, p. 32). The Commissioner answered the complaint and filed a memorandum of law in support of his decision. (Docket Nos. 7, 15). Valentin also filed a memorandum of law in support of her position. (Docket No. 16). The parties have agreed to have the case heard before me. (Docket Nos. 10, 11). After careful review of the administrative record and the briefs on file, the Commissioner's decision is vacated and remanded.

**LEGAL STANDARD**

The court's review is limited to determining whether the Administrative Law Judge ("ALJ") employed the proper legal standards and found facts upon the proper quantum of evidence. Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 16 (1st Cir.1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**  Page 2
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999); Da Rosa v. Secretary of Health and Human Servs., 803 F.2d 24, 26 (1st Cir.1986); Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir.1991). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Secretary of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these may serve as supplementary evidence for the ALJ to consider in conjunction with the examining physician's reports. Irizarry-Sanchez v. Comm'r of Soc. Sec., 253 F. Supp. 2d 216, 219 (D.P.R. 2003) (Irizarry). The burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act ("Act"). See Bowen v. Yuckert, 482 U.S. 137, 146-47, n.5 (1987). A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[1] 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Secretary of Health and Human Servs., 690

---

[1] The phrase "work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §423(d)(2)(A).

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**  Page 3
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

F.2d 5, 6-7 (1st Cir.1982).  In step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If she is, disability benefits are denied.  20 C.F.R. § 404.1520(b).  If she is not, the Administrative Law Judge proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  However, if the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in which it is determined whether the claimant has an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. § 404.1520(e).  If it is determined that the claimant cannot perform this work, then the fifth and final step of the process calls for a determination of whether the claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience.  If the claimant cannot, then she is entitled to disability benefits.  20 C.F.R. § 404.1520(f).

The claimant has the burden, under steps one through four, of proving that she cannot return to her former employment because of the alleged disability.  <u>Santiago v. Secretary of Health and Human Servs.</u>, 944 F.2d 1, 5 (1st Cir.1991).  Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform.  <u>Ortiz v. Secretary of Health and Human Servs.</u>, 890 F.2d 520, 524 (1st Cir. 1989).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Valentin has an eighth grade education and worked as a fish cleaner. (Transcript ["Tr."] 59, 64, 69, 74). She claims to have been disabled since March 7, 2000,[2] at age 31, due to major depression, bilateral carpal tunnel syndrome ("CTS"), cervical myositis, a lumbosacral syndrome, and discal herniation at the L4-L5 level. (Tr. 22, 25, 51).

Internist Dr. Luis Vincenty Pagán treated Valentin from December 4, 2002, through May 19, 2004. (Tr. 236-65). Valentin received treatment for foot pain and heel spurs on three occasions in December 2002 and January 2003. (Tr. 262-65). Dr. Vincenty treated Valentin for muscle spasms in the back, leg, or neck on six occasions between April and September 2003. (Tr. 251-53, 255-58, 260). He also treated her for insomnia in June 2003 and for anxiety in August 2003. (Tr. 252, 256).

On January 28, 2003, Valentin completed the last of five treatment sessions authorized by the State Insurance Fund (SIF) with consultant psychiatrist Dr. Alberto Rodríguez Robles. (Tr. 164-66). At the time, Valentin was taking Desyrel and Xanax. (Tr. 166). During the session, Valentin stated that she was depressed, anxious, restless, listless, and lacked interest in things. (Tr. 165). She had logical, coherent and relevant thought, orientation in the three spheres, adequate memory and judgment, and no hallucinations. (Id.). Dr. Rodríguez concluded that her condition had not improved over the course of treatment. (Tr. 166). He diagnosed major depression with a guarded prognosis and recommended five more sessions. (Id.).

---

[2] In his decision, discussed in more detail below, the ALJ noted that Valentin had previously applied for disability insurance benefits on March 27, 2001, which claim was denied initially, upon reconsideration, and through a hearing decision dated November 18, 2002. (Tr. 17). The ALJ stated that since the decision had become final upon denial of Appeals Council review and Valentin did not timely appeal to this court, the hearing decision was res judicata up to November 18, 2002. (Id.). See Torres v. Sec'y of Health, Educ. and Welfare, 333 F. Supp. 676 (1st Cir. 1971); Sampson v. Califano, 551 F.2d 881 (1st Cir. 1977). Although there is no evidence in the record of Valentin's prior benefits application or its denial other than the ALJ's references, Valentin does not challenge the ALJ's res judicata determination. Thus I will consider only record evidence of Valentin's alleged disability dating from after November 18, 2002, rather than from Valentin's alleged disability onset date of March 7, 2000.

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**  Page 5
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

On February 26, 2003, a SIF progress report authorizing Dr. Rodríguez's recommendation noted that Valentin was in pain but was "[a]lert, active, cooperative, spontaneous, logical, coherent and relevant, not depressive." (Tr. 163). Further progress notes dated April 3 and May 22, 2003, gave essentially the same report; by the last date, she was feeling "[s]o-so." (Tr. 160, 162). On May 22, 2003, SIF discharged Valentin with "[p]ermanent partial disability." (Tr. 160). A June 3, 2003 medical examination report stated that Valentin alleged "pain throughout her back," neck area swelling, and difficulty holding objects; it recommended evaluation by a neurosurgeon. (Tr. 156).

On September 19, 2003, Valentin began treatment with private psychiatrist Dr. Ariel Rojas Davis. (Tr. 289-90). Dr. Rojas noted Valentin's prior treatment by Dr. Rodríguez and treatment for a disc hernia at L5-S1. (Tr. 290). Dr. Rojas reported she had problems sleeping and concentrating and was depressed. (Id.). He diagnosed major depressive disorder. (Tr. 289-90). On October 20, 2003, she reported severe, frequent back pain, but was "[c]ooperative" and "logical." (Tr. 288).

On January 15, 2004, Dr. Rodríguez evaluated Valentin again. (Tr. 186-89). She was still taking Desyrel and Xanax. (Tr. 186). Valentin said she was depressed, could not concentrate, was easily fatigued, and was uninterested in doing anything. (Tr. 186). She reported good relations with her family. (Tr. 187). She needed help to bathe and dress and mostly stayed at home, isolated and withdrawn. (Id.). She said that when she last worked, she had gotten along well with her coworkers and supervisors but felt restless and nervous at work. (Id.). She was depressed and slow during the interview, with slow, logical, coherent and relevant thought; she had average intellectual capacity and no perceptual disorders. (Tr. 188). She had diminished attention and concentration, was easily distracted, and could not follow the sequence of months backwards. (Id.). She had adequate memory and judgment and fair insight, and was oriented in the three spheres. (Id.). Dr. Rodríguez diagnosed severe single episode major depressive disorder with a poor prognosis. (Tr. 186, 188).

On February 13, 2004, clinical psychologist Dr. Hilario de la Iglesia, a non-examining Disability Determination Services ("DDS") physician, submitted a mental Residual Functional

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**  Page 6
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

Capacity ("RFC") assessment and Psychiatric Review Technique Form ("PRTF") for Valentin. (Tr. 190-208). The RFC assessment concluded that Valentin was not significantly limited in the ability to remember locations and work-like procedures; to understand, remember, and carry out very short and simple or detailed instructions; to sustain an ordinary routine without special supervision; to work with others without distraction; to make simple work-related decisions; or to adapt to changes, hazards, travel, and planning in the work setting. (Tr. 191). She was moderately limited in her ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and -week without psychological interruptions; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to accept instructions and respond appropriately to supervisors' criticism. (Tr. 191-92). Overall, her "[c]ondition [was] moderate." (Tr. 190).

In the PRTF, Dr. de la Iglesia assessed that Valentin had a depressive affective disorder characterized by anhedonia, sleep disturbance, difficulty concentrating or thinking, and isolation. (Tr. 198). As a result, her activities of daily living were moderately restricted, and she had moderate difficulties in maintaining social function and in maintaining concentration, persistence, or pace, without episodes of decompensation. (Tr. 205). Dr. de la Iglesia concluded she could "understand, remember and carry out simple and complex instructions. She can concentrat[e] for two hour[] intervals[,] ... make simple decisions and can relate with some people." (Tr. 193).

On March 10, 2004, Dr. Samuel Méndez conducted a consultative neurological evaluation of Valentin.[3] (Tr. 209-17). At that time, Valentin was taking Wellbutrin, Neurontin, Xanax, and Ambien. (Tr. 209). Dr. Méndez reported that Valentin was alert, fully oriented, and cooperative,

---

[3] Valentin was also treated by neurologist Dr. Alfredo Pérez Canabal on several occasions, from on or about October 29, 2001, until May 3, 2004. (Tr. 227-35). But as his handwritten reports are illegible and no legible transcripts have been provided, I cannot consider them in my review.

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**  Page 7
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

with adequate memory. (Id.). Since 2000, Valentin "reports constant neck, shoulder, back, hips, legs, feet, knees, arms, elbows an[d] hands tenderness," sometimes intensifying to back stiffness and pain "shooting down her right leg." (Id.). She claimed "lifting more than five pounds, raising her arms, and remaining in the same position for more than one hour" exacerbated her symptoms. (Id.).

Dr. Méndez's evaluation stated that Valentin had adequate muscle bulk, no atrophy or spasm; tender cervical and lumbar paraspinal muscles; and 4/5 strength symmetrically in all extremities, limited by pain. (Tr. 210). She had positive tinel, mildly decreased proprioception in her hands, and joint tenderness in both hands. (Tr. 210, 217). She had limited ability to perform sustained functions with her hands for more than fifteen minutes, but was able with both hands to grip, grasp, pinch, button a shirt, pick up a coin, write, and tap and oppose her fingers. (Tr. 217). A cervical and lumbar spine examination resulted in a diagnosis of cervical spasm and "[e]ssentially normal" lumbar spine. (Tr. 212). Dr. Méndez diagnosed chronic lumbalgia and cervicalgia, diffuse arthralgia, bilateral CTS, and lumbosacral syndrome. (Tr. 211).

On April 12, 2004, Dr. Osvaldo Rivera Marrero, a non-examining DDS physician, submitted a physical RFC assessment of Valentin. (Tr. 218-26). He made a primary diagnosis of "Disc bulge L4 L5 - Focal disc protrusion" and a secondary diagnosis of 4/5 muscle strength and lower back pain. (Tr. 219). Dr. Rivera assessed that Valentin could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand, walk, or sit for about 6 hours in an 8-hour workday, and push or pull an unlimited amount aside from her lifting and carrying limitations. (Tr. 220). She could occasionally climb, stoop, crouch, or crawl. (Tr. 221). She had no manipulative limitations. (Tr. 222). She had positive bilateral tinel in the hands, disc herniation, tenderness, lumbar and muscle spasms, bilateral CTS, diffuse arthralgia, and chronic lumbalgia. (Tr. 220).

On May 20, 2004, Dr. Rojas wrote in his progress notes that Valentin was depressed. (Tr. 287-88). By August 13, 2004, Valentin was still on Xanax and Wellbutrin. (Tr. 123). Effective May 22, 2005, SIF discharged her definitely with disability due to an emotional condition. (Tr. 158).

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**  Page 8
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

On August 30, 2006, Dr. Rojas completed a mental RFC assessment based on bimonthly visits from September 2003 through August 2006. (Tr. 293-98). His diagnosis was recurrent major depressive disorder, herniated disc L4-L5, and cervical radiculopathy, with a poor prognosis. (Tr. 296). He stated that Valentin suffered symptoms including decreased energy, mood disturbance, difficulty thinking or concentrating, and memory impairment. (Tr. 295). He concluded she had marked limitation in every category of "ability to do work-related activities on a day-to-day basis in a regular work setting," including abilities related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (Tr. 296-97). He estimated her impairments or treatment would cause absence from work more than four days per month. (Tr. 297).

Valentin filed an application for disability insurance benefits on August 27, 2003, alleging disability due to "Emotional Condition, Bilateral Radiculopathy C5-C6, Neuropathy, HNP L5-S1, [and] spurs in the heels." (Tr. 17, 51, 58, 68). Her application was denied initially and upon reconsideration. (Id. 17, 36, 43-5). Valentin requested a hearing, but subsequently waived her appearance. (Tr. 17, 48). ALJ Raúl Canela Pardo conducted a brief hearing with only Valentin's attorney present, but declined to conduct a further hearing without Valentin present, reasoning that it was necessary for him to observe Valentin and hear her detailed testimony in order to develop a full and complete record. (Tr. 17-18, 310-11). Reviewing the evidence of record and the written statement submitted by Valentin's attorney, the ALJ found that Valentin was not disabled. (Tr. 17-26). Valentin requested a review by the Appeals Council, which was denied. (Tr. 5-8).

The ALJ issued his ruling on December 18, 2006. (Tr. 17-26). With regard to the five-step evaluation process, the ALJ found that Valentin had met her burden on steps one through four, but that under step five, Valentin had the residual functional capacity to perform sedentary, simple work activity and thus was not disabled. (Tr. 22-26). Specifically, the ALJ determined that: (1) Valentin had not engaged in substantial gainful activity since the alleged onset of disability; (2) Valentin's bilateral CTS, cervical myositis, lumbosacral syndrome, disc herniation, and depression were

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**      Page 9
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

"severe"; (3) Valentin's combination of impairments did not meet or medically equal one of the listed impairments in Appendix 1 of the regulations; (4) Valentin was unable to perform her past relevant work; but (5) Valentin retained the residual functional capacity to perform the full range of unskilled sedentary work. (Tr. 22, 24-26). Accordingly, the ALJ determined that Valentin was not disabled within the meaning of the Act prior to March 31, 2005. (Tr. 26).

In discussing the medical evidence of Valentin's RFC, the ALJ credited Dr. Rodríguez's January 15, 2004 report that Valentin "was logical, well oriented in the three spheres, coherent and relevant," with adequate memory and judgment. (Tr. 23). He discounted Dr. Rojas's RFC assessment because, while Dr. Rojas's signs "essentially coincide" with Dr. Rodríguez's, "his 'signs and symptoms' and his conclusions are not supported by his own signs and by those on the record as a whole," as Dr. Rojas did not provide "any progress notes after May 20, 2004, or any detailed medical records for that matter." (Tr. 23). The ALJ discredited Dr. Rojas's conclusion that Valentin had markedly limited capacity to perform work activities on a sustained basis. (Tr. 25).

The ALJ found that a longitudinal analysis established that Valentin had "a single episode major depressive disorder with anxiety, moderate, in intensity," and that this analysis suggested a pattern of improvement in her mental symptoms since May 2004. (Tr. 24). He found that due to her depression, Valentin's "daily activities were moderately restricted, she had moderate difficulties in maintaining social functioning and had presented moderate difficulties in maintaining concentration, persistence and pace, without episodes of deterioration or decompensation." (Id.). The ALJ found Valentin had the mental RFC for "simple, unskilled work activity on a regular basis." (Id.).

The ALJ denied Valentin's allegation that she was unable to work due to pain, sadness, and tension. (Id.). The ALJ found that the evidence showed "the presence of medical impairments which could reasonably be expected to cause the symptoms alleged, but not to the extent claimed." (Id.). The ALJ found that because Valentin had been responding to treatment without adverse side effects, did not appear acutely distressed at interviews, took care of her personal needs, and had

Case 3:08-cv-02101-FAB-BJM   Document 17   Filed 09/28/09   Page 10 of 16

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**     Page 10
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

adequate interpersonal relationships, her conditions could not be expected to result in pain or discomfort so disabling as to keep her from doing "sedentary, simple work activity." (Tr. 24-25).

The ALJ noted that when a claimant has non-exertional limitations, the Grid is used "as a framework for decisionmaking." (Tr. 25-26). He then found that with Valentin's RFC to perform "the full range of sedentary work," considering her age, education, and work experience, "a finding of 'not disabled' would be directed by Medical Vocational Rule 201.23. However, the additional limitations had little or no effect on the occupational base of unskilled sedentary work." (Tr. 26). After concluding that jobs existed in significant numbers in the national economy that Valentin could have performed, the ALJ held Valentin was not disabled prior to March 31, 2005. (Tr. 25-26).

## DISCUSSION

The analysis in this case centers on the ALJ's determination at step five in the sequential evaluation process contained in 20 C.F.R. § 404.1520. At that step, the ALJ used the Medical-Vocational Guidelines ("Grid") as a framework for his determination that Valentin was able to perform work that existed in the national economy. Valentin does not contest the ALJ's findings with regard to steps one through four. Thus, the sole question before the court is whether the ALJ's decision at step five was based upon substantial evidence.

Valentin argues that since she had non-exertional impairments, the ALJ erred in relying on the Grid to determine that she was able to perform work that existed in the national economy. (Docket No. 16, p. 15). It is well established that "[t]he Grid is based on a claimant's exertional capacity and can only be applied when claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level." Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994), *citing* Sherwin v. Sec'y of HHS, 685 F.2d 1, 2-3 (1st Cir.1982). Where the claimant's non-exertional impairments limit her ability to perform the full range of jobs, the Commissioner must carry his burden by other means, "typically through the use of a vocational expert." Ortiz, 890 F.2d at 524. But "[i]f a non-strength impairment, even though considered significant, has the effect

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**  Page 11
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability." Id.

Regarding mental impairments in particular, exclusive reliance upon the Grid is appropriate so long as the claimant's mental impairment does not "interfere more than marginally with the performance of the full range of unskilled work." Id. at 526. The procedure for evaluating a mental impairment is set forth in 20 C.F.R. § 404.1520a. Under the regulation, the ALJ's decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." 20 C.F.R. § 404.1520a(e)(2). The four functional areas in which the Commissioner must rate each claimant are: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). A mental impairment may be considered "not severe" when the Commissioner rates the claimant's degree of limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area. 20 C.F.R. § 404.1520a(d)(1); see also Figueroa-Rodríguez v. Sec'y of HHS, 845 F.2d 370, 372 (1st Cir. 1988).

Here, the ALJ found that prior to March 31, 2005, Valentin was moderately limited in the first three functional areas and had no episodes of deterioration or decompensation. (Tr. 24). The ALJ thus rated Valentin's mental impairment as "severe." (Tr. 22). These findings accord with Dr. de la Iglesia's mental RFC assessment and PRTF. (Tr. 190-208). They also accord with Dr. Rodríguez's January 2004 report that despite Valentin's diminished concentration, her thoughts were "slow, logical, coherent and relevant," and that while she did not like to interact with people, she had good relations with her family and coworkers. (Tr. 187-88). These mixed indicators – some positive, some negative – of Valentin's concentration and social functioning support a finding of "moderate" limitation. I find that substantial evidence supports the ALJ's rating of the four

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**   Page 12
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

functional areas and his consequent finding of severe impairment.

The next question is whether the ALJ's exclusive reliance upon the Grid[4] was proper in light of Valentin's severe impairment, which constitutes a significant non-exertional limitation. Reliance on the Grid is disfavored in mixed exertional/non-exertional cases, as a claimant physically suited for sedentary jobs, but suffering from depression or another mental ailment, may be unable to perform gainful activity. Burgos López v. Sec'y of Health and Human Servs., 747 F.2d 37, 41 (1st Cir. 1984); Padilla v. Barnhart, 186 Fed. Appx. 19, 21 (1st Cir. 2006), *citing* Ortiz, 890 F.2d at 524-25. However, such sole reliance is permitted if the mental impairment does not "interfere more than marginally with the performance of the full range of unskilled work." Ortiz, 890 F.2d at 526.

There is a two-pronged inquiry into whether a non-exertional limitation reduces a claimant's residual work capacity: the Commissioner must assess (1) the claimant's mental capability to perform close to the full range of unskilled work, and (2) her ability to cope with the demands of any work environment, regardless of the skill level involved. Miranda-Monserrate v. Barnhart, 520 F. Supp. 2d 318, 326 (D.P.R. 2007); Social Security Ruling (SSR) 85-15, 1983-1991 Soc. Sec. Rep. Serv. 343 (1985) (containing the two sets of mental capabilities required for unskilled work). The first inquiry focuses on whether a claimant is able to understand, remember, and carry out simple instructions, respond appropriately to the normal work environment, and to deal with the changes in a routine work setting. Miranda-Monserrate, 520 F. Supp. 2d at 326. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. Id. The second inquiry requires the Commissioner to determine whether a claimant can be punctual, attend work regularly, accept supervision, and remain in the workplace for an entire day. Irlanda v. Sec'y of Health and Human Servs., 955 F.2d 765, 770 (1st Cir. 1991). Such limitations may erode the occupational base of unskilled sedentary work; the question is how much. Id. at 770.

---

[4] While the ALJ ostensibly used the Grid as a framework, the failure to take vocational testimony in reality means the ALJ relied exclusively on the Grid. Ortiz, 890 F.2d at 524 n.4.

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**  Page 13
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

Here, the ALJ found that Valentin had the residual functional capacity to perform the full range of sedentary work and that her "additional [non-exertional] limitations had little or no effect on the occupational base of unskilled sedentary work." (Tr. 26). The ALJ cited Dr. de la Iglesia's February 2004 RFC assessment as a basis for the ALJ's own RFC determination. (Tr. 24, 193). As a non-examining physician's RFC assessment cannot constitute substantial evidence, it must be considered in conjunction with the reports of examining physicians. Irizarry, 253 F. Supp. 2d at 219.

There is some evidence in the record to support the ALJ's findings. Dr. de la Iglesia's RFC assessment was based on Dr. Rodríguez's treatment records. (Tr. 190). The ALJ cited the assessment's conclusion that Valentin was "able to understand, remember and carry out simple and complex instructions." (Tr. 24, 193). Also, the RFC assessment rated Valentin as not significantly limited in her ability to make simple work-related decisions. (Tr. 191). In the psychiatric report he made less than a month before Dr. de la Iglesia's RFC assessment, Dr. Rodríguez stated that Valentin had adequate memory and judgment and average intellectual capacity. (Tr. 186, 188, 190). This evidence supports Dr. de la Iglesia's conclusions. (Tr. 193). The RFC assessment further rated Valentin as not significantly limited in the ability to sustain an ordinary routine without special supervision, get along with her coworkers, and respond appropriately to changes in the work setting. (Tr. 191-92). Dr. Rodríguez reported that Valentin had had good relations with coworkers and supervisors when she was last working, despite restlessness and nervousness at work. (Tr. 187). Overall, Valentin's past work history supports Dr. de la Iglesia's rating; her self-reported restlessness and nervousness might limit her ability to respond to changes and sustain a routine, but Valentin's self-reporting does not indicate *significant* limitation. The RFC assessment and the supporting evidence in Dr. Rodríguez's reports thus suggest that Valentin's mental capability for unskilled work passes the first prong of the inquiry outlined above. Miranda-Monserrate, 520 F. Supp. 2d at 326.

But regarding the second prong, namely, Valentin's ability to cope with the demands of the work environment, the substantial evidence in the record contradicts the ALJ's conclusory one-

sentence finding that "the additional limitations had little or no effect on the occupational base of unskilled sedentary work." (Tr. 26). Rather, the evidence shows that Valentin's limitations in this category would more than marginally erode the occupational base of unskilled sedentary work. Irlanda, 955 F.2d at 770. Dr. de la Iglesia rated Valentin as moderately limited in her activities of daily living, maintaining social functioning, and several work-related areas of functioning. (Tr. 191-92, 205). Dr. de la Iglesia concluded that Valentin could concentrate for only two hours at a time and had a moderately limited ability to perform activities on schedule and at a consistent pace, complete a normal workday and -week without interruption, take supervisors' instructions and respond appropriately to criticism, and interact appropriately with the general public. (Tr. 191-93).

These conclusions are supported by Dr. Rodríguez's treatment records. In his January 2004 report, Dr. Rodríguez stated that Valentin's daily activities were minimal, she was easily fatigued, and she had low tolerance for the pressures of daily living. (Tr. 186-88). She was easily distracted: she could not concentrate enough to name the calendar months backwards. (Tr. 188). She disliked social interaction and displayed depression, irritability, isolation, and withdrawal; "everything bother[ed] her." (Tr. 187-88). Moreover, Valentin's condition apparently worsened despite a continued course of treatment: on January 28, 2003, Dr. Rodríguez gave Valentin a guarded prognosis, concluding that her condition had not improved after five sessions and she needed more treatment; a year later, he downgraded her prognosis to poor. (Tr. 166, 188). This evidence supports the moderate limitation in ability to cope that appears in the RFC assessment.

The limitations reported by Drs. de la Iglesia and Rodríguez would have a significant negative impact on Valentin's ability to function in the workplace, even in an unskilled sedentary job. Burgos López, 747 F.2d at 42. The second prong of the Commissioner's inquiry squarely encompasses Valentin's moderately limited ability to attend work regularly and punctually, concentrate for extended periods, deal appropriately with her supervisors, and get through the working week. Irlanda, 955 F.2d at 770. Also, Dr. Rodríguez's findings that Valentin's prognosis

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**  Page 15
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

was poor and she required psychiatric treatment are sufficient to warrant use of a vocational expert, undermining the ALJ's use of the Grid only. Miranda-Monserrate, 530 F. Supp. 2d at 331-32.

It is immaterial to the substantial-evidence analysis that the ALJ gave little weight to Dr. Rojas's mental RFC assessment. (Tr. 23, 25). Dr. Rojas rated Valentin's abilities to do work-related activities "markedly limited," which would seriously affect the occupational base. (Tr. 295-96). It was within the ALJ's discretion to deny controlling weight to Dr. Rojas's assessment, although he was a psychiatric specialist who treated Valentin for three years, since the notes in the record provide little support for the assessment and his finding of marked limitations is inconsistent with other substantial evidence that Valentin's limitations were moderate. 20 C.F.R. § 404.1527(d)(2)-(5); Roman-Roman v. Comm'r of Soc. Sec., 114 Fed. Appx. 410, 411-12 (1st Cir. 2004), *citing* Rodriguez-Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 2-3 (1st Cir. 1987). Even without Dr. Rojas's assessment, the record shows that vocational expert testimony was needed.

In light of the evidence discussed above, I find that the ALJ's conclusion – that Valentin's mental impairment had little or no effect on the occupational base of unskilled sedentary work – is not supported by the substantial evidence of record. Valentin's mental restraints do not necessarily show she is disabled, but they do preclude reliance on the Grid. Roman-Roman, 114 Fed. Appx. at 412. The First Circuit has long cautioned ALJs to err on the side of taking vocational evidence when a significant non-exertional limitation is present, and in recent years the Court has heavily favored the use of a vocational expert in all but the most clear-cut cases, and this is not a clear-cut case. Ortiz, 890 F.2d at 528; Miranda-Monserrate, 520 F. Supp. 2d at 324 n.2 (citing cases).

The ALJ also based his conclusion that the full range of sedentary work was available on his finding that Valentin's pain could not be as severe as she claimed and thus did not affect the occupational base. (Tr. 24-26). Like mental illness, "[p]ain can constitute a significant non-exertional impairment which precludes naked application of the Grid and requires use of a vocational expert." Padilla, 186 Fed. Appx. at 21, *citing* Nguyen, 172 F.3d at 36. Because I find that Valentin's

**Marisol Valentin-Nieves vs. Michael J. Astrue, Commissioner of Social Security**      Page 16
Civil No. 08-2101 (FAB/BJM)
OPINION AND ORDER

mental impairment is alone sufficient to require vocational expert testimony, I need not reach the issue of whether the ALJ's finding regarding Valentin's pain was supported by substantial evidence.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is **VACATED** and remanded to the Commissioner for the taking of evidence from a vocational expert and for further findings consistent with this opinion. Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

At San Juan, Puerto Rico, on this 28th day of September, 2009.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge